302 A.2d 299.

STEPHEN A. FANNING, SR. *vs.* MARGARET A. FANNING, *Executrix.*

FEBRUARY 12, 1973.

PRESENT: Roberts, C.J., Paolino, Joslin and Kelleher, JJ.

PER CURIAM. The plaintiff brought this action against Margaret A. Fanning, wife of his deceased brother Charles, individually in her capacity as executrix under her husband's will. He alleges that she breached an agreement to make and execute a reciprocal will with her husband and not to revoke that will. A Superior Court justice sitting without a jury found for the defendant and the plaintiff has appealed.

Charles J. Fanning and defendant were married on April 14, 1955, and executed their respective wills in December, 1959. Charles died in September, 1964. In October, 1967, plaintiff commenced this action claiming that defendant and Charles agreed to make reciprocal wills and keep them unrevoked. The plaintiff was the sole witness to testify about the alleged agreement. His testimony was based upon a conversation which he said took place between him and his brother Charles about one month before Charles' marriage. The trial justice found against plaintiff.

The plaintiff concedes that he must prove his case by clear and convincing evidence. *Williams* v. *Rhode Island Hospital Trust Co.*, 88 R. I. 23, 36-37; 143 A.2d 324, 332 (1958). Mere proof that the deceased and his wife executed separate wills which are reciprocal in their terms is not enough. *See Lamberg* v. *Callahan*, 455 F.2d 1213 (2d Cir. 1972), where the court recognized the higher standard of proof called for in the *Williams* case and declared that such a standard is needed in light of the serious and far-reaching consequences of an agreement calling for an irrevocable will. The survivor cannot alter the estate plan should there be intervening changes in circumstances or any number of unforeseen events that may render the presence of such a will

so inappropriate or unfair that the deceased, had he or she lived, would have desired or sanctioned appropriate changes in the testamentary provisions.

The basic issue here is whether defendant and the deceased entered into an irrevocable agreement whereby the husband agreed to leave everything he owned during his life to his wife and she, in turn, agreed to leave everything she received through the will in two equal shares, one to be shared by certain members of the Fanning family and the other to be shared by certain members of defendant's family. Since irrevocability negates the ambulatory feature of the usual will, each part of the agreement must be clearly demonstrated.

In urging error on the part of the trial justice, plaintiff argues in substance that the evidence did not support his findings and that he misconceived or overlooked material evidence. We cannot agree.

The plaintiff points to the identical contingent residuary clause found in both wills and claims that the trial justice failed to appraise its evidentiary thrust. Even if this clause is considered as evidence of the alleged irrevocable agreement, it demonstrates an inconsistency in a portion of plaintiff's claim.

In his complaint plaintiff lists the three persons in the Fanning family who were to benefit from the agreement between his brother and defendant as himself, his sister, Elizabeth, and his niece, Barbara. When he testified, plaintiff said that the agreement called for Elizabeth to receive her share only in the event she survived her sister-in-law (defendant) and if Elizabeth pre-deceased defendant, her share was to be divided between plaintiff and another brother, Robert. The residuary clause of both wills, however, makes an outright gift to Elizabeth.

During his life, Charles J. Fanning held a substantial interest in a very successful construction company. In 1963,

he created an inter vivos trust the corpus of which was composed of stock of various corporations which were allied with the construction business. The trust provides that upon its termination, the corpus would be divided between the niece, Barbara, and another nephew named Daniel. The trust is at odds with the alleged agreement because the deceased had removed from his potential estate an asset which in all likelihood had the greatest value of all his other property. The establishment of the trust is contrary to deceased's alleged statement that his wife would get "everything he had during his life," and she, in turn "* * * would take that money and hold it and support herself and when, if she survived him and when she died, she would, by will, leave that money in two halves, one-half to certain of her heirs and one-half to certain of Charles' heirs and he told me also that he was then getting $20,000.00 a year as well."

Finally, during cross-examination, plaintiff frankly admitted that his brother's conversation about the alleged agreement was actually a description of what he was then contemplating. There is no evidence that defendant and Charles, or either of them, took any steps to formalize the alleged agreement at that time. In fact their wills were not executed until some four years after their marriage.

The trial justice found that although plaintiff was frank in his testimony relating to what his brother had said to him, he could not on the basis of this testimony find that a contract as alleged was in fact made. He also found that Charles' actions in his lifetime in dealing with his own property and those of defendant in dealing with her estate in Charles' lifetime were inconsistent with any such agreement as claimed by plaintiff. He then concluded that plaintiff had failed to prove his case by "clear and convincing evidence." The inconsistencies noted above support his conclusion.

A more complete and detailed decision by the trial justice might have obviated the plaintiff's argument that he misconceived or overlooked material evidence, but the misconceptions and oversights relied upon, even if established, are not of sufficient probative force to persuade us that the trial justice was clearly wrong or failed to do substantial justice in concluding that the plaintiff had not established his case by "clear and convincing evidence."

The plaintiff's appeal is denied and dismissed, the judgment appealed from is affirmed, and the cause is remanded to the Superior Court.

Although Mr. Justice Powers was a member of the court when this case was argued, he did not participate.

Mr. Justice Doris did not participate.

*Letts & Quinn, Daniel J. Murray, Jerome B. Spunt,* for plaintiff.

*Aram A. Arabian,* for defendant.